UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAHMOD SEYAM,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>Respondents. | Case No.: 25cv3850-LL-SBC<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>(ECF Nos. 1, 2) |

Before the Court are Petitioner Mahmod Seyam's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [ECF No. 1 ("Pet.")] and Motion for Temporary Restraining Order [ECF No. 2]. Also before the Court are Respondents' Return in Opposition to the Habeas Petition [ECF No. 7 ("Ret.")], and Petitioner's Traverse [ECF No. 8 ("Traverse")]. For the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus, **DENIES AS MOOT** the Motion for Temporary Restraining Order, and **ORDERS** Petitioner's immediate release from custody.

**I.   BACKGROUND**

Petitioner is a "stateless" individual who was born in Egypt to Palestinian parents. Pet. at 3. Petitioner entered the United States on October 13, 2023 and was sentenced to six-month's imprisonment in Texas for illegal entry. Pet. at 3; Ret. at 1–2. On April 11,

2024, Petitioner was released from the Bureau of Prisons and taken into United States Department of Homeland Security's Immigration and Customs Enforcement ("ICE") custody. Ret. at 2. Petitioner was ordered removed on May 31, 2024. Pet. at 3; ECF No. 1-2, Declaration of Mahmod Seyam ("Seyam Decl.") ¶ 3. On June 24, 2024, Enforcement and Removal Operations' ("ERO") Removal and International Operations ("RIO") confirmed that Petitioner was a citizen of Palestine, not Egypt. Ret. at 2. Petitioner remained in ICE custody from April 2024 to July 2024, when ICE released him on Order of Supervision. Pet. at 3; Ret. at 2. Since his release in 2024, Petitioner attended all his ICE check-ins and sustained no criminal convictions. Pet. at 3; Seyam Decl. at ¶ 2. On October 6, 2025, ICE re-detained Petitioner at his check-in. Pet. at 3. Petitioner alleges that he was not given any written or oral notice as to why he was being re-detained. Pet. at 3. He further alleges that he was not given a chance to explain why his release should not be revoked. Pet. at 3. Respondents do not state that any notice or interview was given at the time of re-detention. Ret. at 2.

On October 30, 2025, ICE provided Petitioner a Notice of Revocation of Release, which stated that Petitioner's release was being revoked "based on a review of your official [noncitizen] file and a determination that there are changed circumstances in your case." Pet. at 3; ECF No. 7-3, Notice of Revocation of Release ("Notice"). The Notice further stated that "ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. On May 31, 2024, you were ordered removed to Egypt by an authorized U.S. DHS/DOJ official." Notice.

Respondents state that an informal interview was also given on October 30, 2025. Ret. at 2. During the interview, Petitioner "confirmed that he is not an Egyptian citizen, showed the officer a copy of a Palestine Citizenship Certificate, stated that he fears removal to Palestine, and expressed a desire to be removed to Dubai." Ret. at 2. Respondents claim that Petitioner was referred to United States Citizenship and Immigration Services (USCIS) for a credible fear interview concerning his fear of return to Palestine and Israel. Ret. at 3. On December 9, 2025, an Immigration Judge reviewed and affirmed USCIS's

determination on November 24, 2025 that Petitioner did not have a credible fear. Ret. at 3. In turn, Petitioner claims that he never received a chance to contest his re-detention. Pet. at 3. Respondents state that EROC has submitted a request to the Consul General of Israel for an authorization to return Petitioner to the Palestinian Territories on December 19, 2025 and a request to RIO for a current travel document for Petitioner to be removed to Palestine. Ret. at 3; ECF No. 7-8, Declaration of Jason Cole ("Cole Decl.") ¶¶ 13–14.

Petitioner now argues that ICE did not comply with applicable regulations when it re-detained him in October 2025, and thus his detention is unlawful.

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("[Section] 2441 habeas proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."); *see also Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order.").

/ / /

/ / /

### III. DISCUSSION

Petitioner brings two claims to argue that he should be released from detention: (1) ICE failed to comply with its own procedures to re-detain him, in violation of the Fifth Amendment Due Process Clause of the U.S. Constitution and the Administrative Procedures Act; and (2) Respondents are detaining him without a significant likelihood of removing him, in violation of *Zadvydas*. Pet. at 7–14. Petitioner also argues that ICE may not remove him to a third country without providing him with adequate notice and an opportunity to be heard. *Id*. at 15–18. The Court finds that Petitioner's first claim is meritorious and justifies Petitioner's release; therefore, the Court will only address this claim in this Order.

Petitioner challenges his detention as unlawful because ICE failed to provide the required notice and opportunity to be heard before re-detaining him. The Court agrees.

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976).

The detention and release of noncitizens that are subject to a final order of removal are governed by 8 U.S.C. § 1231. This statute provides that "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). It also authorizes the detention of noncitizens during this removal period. *Id*. § 1231(a)(2). However, once that time passes and "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released on supervised release. *Zadvydas*, 533 U.S. at 699–700; *see* 28 U.S.C. § 1231(a)(3) ("If the [noncitizen] does not

leave or is not removed within the 90-day removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

Once ICE releases a noncitizen on supervised release, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Nouri v. Herrera*, SA CV 25-1905-JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (citation omitted). Supervised release and any revocation of such release thereafter is governed by either 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13.[1] *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025). If ICE chooses to re-detain, the noncitizen must "be notified of the reasons for revocation" and be afforded "an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification."[2] 8 C.F.R. § 241.13(i)(3). Thereafter, the noncitizen may "submit any evidence or information that [he] believes shows there is no significant likelihood [he may] be removed in the reasonably foreseeable future, or that [he] has not violated the order of supervision." 8 C.F.R. § 241.13(i)(3).

Here, Petitioner was in ICE custody from April 2024 to July 2024, when ICE released him on Order of Supervision. Pet. at 3; Ret. at 2. On October 6, 2025, ICE re-

---

[1] Respondents do not appear to suggest that Petitioner violated the terms of his supervised release (*see generally* Ret.), ruling out § 241.4(l)(1) or § 241.13(i)(1) as the source of his revocation. Rather they appear to rely on either § 241.4(l)(2) or § 241.13(i)(2).

[2] These requirements for notice and an initial informal interview are not explicitly required in § 241.4(l)(2), but courts have held that the same requirements constrain revocation of release under this provision as well. *See Diaz*, 2025 WL 2581575, at *5 (citing various district court cases that have rejected the government's arguments that these provisions do not apply to § 241.4(l)(2)); *Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *4 (S.D. Cal. Oct. 10, 2025) ("District courts have consistently…held that § 241.4(l)(1)'s procedural requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2).").

detained Petitioner. Pet. at 3; Ret. at 2. Respondents do not dispute Petitioner's claim that ICE did not serve Petitioner any written or oral notice of revocation of release when ICE re-detained Petitioner. Pet. at 3; Ret. at 2. Instead, Respondents claim they served Petitioner a Notice of Revocation of Release on October 30, 2025. Ret. at 3. The Notice states that Petitioner's "order of supervision has been revoked . . . based on a review of [Petitioner's] official [noncitizen] file and a determination that there are changed circumstances in [Petitioner's] case." ECF No. 7-3. The Notice however does not state what those changed circumstances were.

Courts have found similar form revocation notices to be insufficient to provide notice under the statute. *See Xayakesone v. Noem*, No. 25-CV-2995-JES-BJW, 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19, 2025) (finding notice insufficient when it stated that the "decision has been made based on a review of your official [noncitizen] file and a determination that there are changed circumstances in your case"); *see also Sargsyan v. Noem*, No. 25-CV-3857 JLS (JLB), 2026 WL 92044, at *3 (S.D. Cal. Jan. 13, 2026) (finding a generic form revocation letter insufficient to provide notice); *Tran v. Noem*, No. 25-cv-2391 BTM (BLM), 2025 WL 3005347, at *3 (S.D. Cal. Oct. 27, 2025) (holding that this "notice must be in writing and contain all the reasons for the revocation of the [noncitizen's] release"); *Nouri*, 2025 U.S. Dist. LEXIS 171809 at *14 ("Petitioner cannot be expected to 'respond to the reasons for revocation stated in the notification' when the [n]otice does not actually state any reasons for revocation" (citation omitted)). Therefore, the Court finds that the Notice's bare-bones explanation is insufficient to provide Petitioner with adequate reasons for the revocation of his release.

Further, after re-detaining a noncitizen who is out on supervision, ICE must "promptly" conduct "an initial informal interview" to "afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). Here, Respondents do not dispute Petitioner's claim that ICE did not conduct an initial informal interview at the time of re-detention on October 6, 2025. Ret. at 3, ECF No. 7-3. Instead, Respondents allege that ICE conducted an interview on October 30, 2025,

twenty-four days after Petitioner's re-detention [Ret. at 2] while Petitioner claims that Petitioner never got "a chance to contest his re-detention" [Pet. at 3]. However, courts have found ICE's failure to provide an informal interview immediately after the revocation of release constitutes a due process violation. *See e.g.*, *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (holding that informal interview was not sufficiently "prompt" where it took place twenty-seven days after revocation and collecting cases); *Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *5 (E.D. Cal. Aug. 20, 2025) (a two-month delay in providing an informal interview "renders petitioner's re-detention unlawful"); Order Granting Habeas Corpus Petition, *Sayvongsa v. Noem*, No.: 3:25-cv-02867-AGS-DEB (S.D. Cal. Oct. 31, 2025), ECF No. 10 (granting petition where petitioner did not receive informal interview for twenty-one days after being re-detained).

Even if the interview had been conducted promptly, as the regulation requires, Petitioner would not have been able to respond meaningfully to the reasons for the revocation of his release because ICE did not provide sufficient notice explaining the reasons for the revocation. "Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition." *Adam v. Noem*, No. 25-CV-3854 JLS (BJW), 2026 WL 92067, at *3 (S.D. Cal. Jan. 13, 2026) (quoting *Sarail A. v. Bondi*, ---- F. Supp. 3d ----, 2025 WL 2533673, at *10 (D. Minn. 2025) (finding that even when ICE agents conducted an interview immediately after detaining Petitioner, "this interview could not have provided Petitioner with 'an opportunity to respond to the reasons for revocation stated in the notification' [] because there was no notification."); *Rasakhamdee v. Noem*, No. 25-cv-2816-RBM-DEB, 2025 WL 3102037, at *4 (S.D. Cal. Nov. 6, 2025) (finding an identically worded written notification insufficient as "ICE's conclusory explanations for revoking [p]etitioner's release did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at the post-detention informal interview" (internal quotation marks and citations omitted)).

"Government agencies are required to follow their own regulations." *Hoac v. Becerra*, No. 25-cv-1740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 US. 260, 268 (1954)). "[W]hen ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases).

In sum, the Court finds that because ICE did not follow its own regulations in deciding to re-detain Petitioner, these failures constitute a violation of Petitioner's due process rights and justifies his release from unlawful detention. *See, e.g.*, *Tran*, 2025 WL 3005347, at *3–4 (granting a habeas petition where ICE failed to follow § 241.13(i)(3) procedures); *Xayakesone*, 2025 WL 3229102, at *3–5 (same); *Truong*, 2025 WL 2988357, at *5–6 (same).

## IV.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1], **DENIES AS MOOT** Petitioner's Motion for Temporary Restraining Order [ECF No. 2] and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting Order of Supervision. The Court **ORDERS** that Respondents cannot re-detain Petitioner without following the procedures set out in 8 C.F.R. § 241.4, 8 C.F.R. § 241.13, and other implementing regulations. As this concludes the litigation in this case, the Clerk of Court **SHALL** close the file.

**IT IS SO ORDERED.**

Dated:  January 22, 2026

Honorable Linda Lopez
United States District Judge